The next case this morning is 520 284 people versus Hickman arguing for the appellant. James Hickman is john Hamlin arguing for the apple. Eight people of the state of Illinois is Hiram Fenjack. You have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please. Not only the clerk is permitted to record these proceedings. Good morning council. Uh I've been telling everybody this morning I apologize for not wearing a robe. I'm in downtown Chicago helping with the new judge orientation. Uh but thanks to zoom, I was able to participate this morning. Um Mr Hamlin, I believe. Are you ready to proceed? Uh yes, your honor. I'm hoping you can hear me. We can. Okay, thank you. Yes, I am. Go right ahead. Thank you. Um they please the court. Um and good morning, your honors and council. Um I'm john Hamlin appearing on behalf of my client James Andrew Andy Hickman. My client was convicted of first degree murder at a bench trial after the tragic death of his two month old son Evander in november of 2018. The primary issue on appeal your honors of course pertains to the insufficiency of the evidence put forth at the bench trial specifically as to the act and mens rea requirements of the murder statute. Um to this day to this day there is no judge, prosecutor, attorney, no one doctor who can point to any specific act that occurred that could be attributable to uh to Mr Hickman uh toward toward this child. And that's majority of what I'd like to spend my my time on. Uh your honors before getting into the evidence uh you know at trial, I think I would point out that the uncertainties in this case, the uncertainties began at its very outset. Um Mr Hickman and this is in evidence, Mr Hickman was arrested on the way back from the hospital, the way back to his home uh after leaving the hospital after his son's death. Um I refer to this as a rush to judgment in uh in this case that he was arrested immediately after leaving the hospital. Um and then the initial charges then the initial uh charges uh were filed just two days after the child's death. Those charges alleged murder by the staking quote unquote shaking of the child. Approximately four months later however um after the prosecution had had that much further time to speak with the doctors to investigate lay witnesses and to do other investigation and amended information was filed which will lead to taking or or striking of event even under. So this case if anything at that point had become more uncertain um to them four months after it was first charged. And I understand the charges are amended of course. Um this is not an uncommon thing but again the case was charged. The man was arrested before he even got home after leaving the hospital where his child where his child had had died. They had months to invest council. How long was the child in the hospital before death? Just a matter of days. Your honor the matter of days and the uncertainty continued to the very end of the case in the circuit court when the judge in denying the post trial motions claim that no act had been proven stated um and it's on page 35 of my my brief your honors um judge stated in rejecting the post trial motion claim that no act had been proven. If you read this and obviously you have and but again a very close reading of this um is the judge saying I don't know what happened. We just we just don't know what the judge said was we're never going to know exactly what happened. But in my verdict I found that something did happen. The appellate court is going to have to review this evidence and find whether a to the same conclusion as I did. It sounds like the court um you know look I mean this seems like hardly resounding or a compelling statement of findings of the actus reius element of any crime and Mr Hickman's guilt. The failure of the prosecution to prove the act requirement for this charge defense is indeed a primary claim of this cause and appeal. And again I would emphasize to this day I don't think anyone medical, legal, whomever could say that they know what happened to this child. It just wasn't, it just wasn't introduced. So you're under that counsel, you've got what I would say dueling medical theories, medical experts that testified and um obviously the court did say we don't know what happened as and we don't know how the injury was sustained. But that medical testimony and that evidence, I mean that's certainly circumstantial evidence that a trial court can consider when when making its ruling. Correct. Yes, your honor. I understand and uh and I was just about to start to talk about the medical. So we're we're having similar timing thoughts. Um this was not a case first of all just context again as to the medical. This was not a case where there was a confession nor was there an eyewitness nor was there any object that might do harm to a child found anywhere of relevant. And so the state's case did come down to the medical. I don't think there's any question about and the problems there were several. First of all your honors um none of the medical witness testified to findings beyond a reasonable degree of medical certainty. Now I've taken time in my brief to kind of to discuss what that means. I mean you know you all and I have done depositions where that term comes up. I think it's more of a civil term but maybe it should be applied in criminal cases. Well I don't think so but even let's say arguably maybe it it wasn't here. None of the witnesses testified that their findings were made within a re or beyond a reasonable degree or even within a reasonable degree of medical certainty. One of the state's experts dr Swofford was never even qualified as an expert. Um and that's never expressly even permitted to state her opinions. Um dr Swofford then testified that she thought that the injury had been inflicted for the reason that no one had given her any history of accident. Now this is this is a murder case where my client is doing a 38 year sentence and a doctor got on the stand and testify that well I think the injuries were inflicted because nobody's told me otherwise that that can't be the standard that that just can't be the standard. So perhaps most importantly um your honors that the testimony of each of the medical witnesses was so thoroughly couched in uncertainty. And uh in my opening brief on page um 33 I've kind of summarized that um I mean we have words from the medical experts and again it's on this card I laid out on page 33 of the of the opening brief. You know dr um bond said that there was some kind of suspicious head or brain problem with Evander. Dr. Hodge testified to her concern quote unquote that Evander had a serious brain injury said that the injuries those injuries could be accidental but was suspicious and concerned that they were not. Dr. Goyle told the court that um similarly that Evander's injury injuries presented a highly concerning situation for abusive head trauma. Dr. Swofford as I said was not even qualified as an expert witness. Um and most most significantly though as to Dr. Swofford was her acknowledgement that she found that this was a non excellent I just can't emphasize this now a non accidental injury only because no one told her otherwise gave her any history of anything otherwise. Dr. Eli um Ely who was the pathologist who performed the autopsy had no idea whether Evander had been shaken or struck nor could she say that the closed head injury was inflicted intentional knowing or anything else about it. Um so you know is this is this enough in a case of murder where these doctors are so and I've talked a lot about the apples and oranges that the tension that exists between the medical world and its terms and the legal world um and its terms. But again none of these witnesses even said to a reasonable degree of medical certainty or neuropathological certainty or any other uh level of of certainty. Um and then I'm seeing that my time is going to expire but just very simply um the state argues and it's brief that um the the appellant cannot point to any alternative person or event that could have that could have caused these injuries. And I would remind the court that there's evidence that a woman stayed in the house that night um with Mr Pickman. There's no evidence that there was anything going on between them. But this is a friend of both the mother of the child and um Mr Hickman. She stayed in the house even though the mother of the child wanted her gone. Um but she stayed there nonetheless. Yeah there was someone else in the house and Mr Hickman provided an alternate explanation that of I gave my child a bath and he slipped out of out of my hands. He said that story several times to the police and others. Um and again your honor, I'd love to come on and discuss this more. This is so important. Um but I see my time is up. So thank you your honor. Well and obviously counsel you'll have your time for rebuttal. But I just want to ask and pardon me. I don't have access to uh my briefs computer whatnot. As far as dr Swofford being qualified as an expert. Was there any objection from from defense counsel of her testimony uh or her qualifications or anything such as that? No your honor. I again this is this litany parade of medical experts. And again this is my this is my reasonable supposition is that after you see 1-2-3-4-5 some of those um details start to fall off. Oh my gosh she she was never qualified. But the answer to your question is I recall is no. Okay well thank you. Um justice Welch or justice more. Do you have any questions at this time? No questions. No. Okay. Uh Mr Finjack you're on mute. So once you unmute go right ahead. Good morning your honors. Um well I would just like to say then and um a case like this where you're questioning the sufficiency of the evidence. Um it's really comes down to the the fact finders. The one that's given the the deference um in in reaching their decision. So uh as long as any rational fact finder could have reached the conclusion um the verdict should be the the court heard numerous medical experts testify. Um the evidence established that the child was completely healthy during his um two year two months um that he was alive. The afternoon that he was brought over to stay with his father there were he he seemed completely healthy. There were no issues. Um medical evaluations and autopsy revealed uh that the child that suffered it's called the triad uh subdural um hemorrhaging retinal hemorrhaging and traumatic axonal injury. And this is believed by a lot of medical experts that it is caused by a rapid rapid deceleration acceleration of the child's head. Um there are other other opinions as far as uh the validity of shaken baby syndrome or abusive head trauma as it's all now. But the state did the court heard the medical evidence. Um the court heard the defendants experts. Uh he had the opportunity to put on the countervailing theory as to what caused the injuries and the defenses uh actually contradicted each other. I believe it was dr Scheller um theorized that he didn't believe the injuries could be caught caused by blunt force trauma by the fall by by falling as the um defenses theory is when the child slipped that may have caused the injuries. Uh he thought dr Scheller believed it could have been SIDS that then caused the reperfusion injury that resulted in the massive brain damage uh that occurred to the child. Um he also thought it could be a blood clotting issue. The defense's other expert witness completely contradicted each one of those theories. He felt that it hitting his head and um did not believe that SIDS or a blood blood clot would be the cause cause of the injuries. And the judge you know heard all of the the various medical testimony and he was in the best position to evaluate the credibility of uh of the witnesses and come to uh come to the conclusion that he did. And as far as um that defense counsel when we say that um the defendant wasn't that we're putting the burden on them to uh to explain what happened. The fact is that so much of the medical evidence indicates that these injuries were caused by something violent, some sort of violent motion that had happened likely very injuries occurred very close to when they began to manifest so that that would quit the occurrence of the injuries in the time frame when the child was alone with his father. Um so his the state's position is basically that his story about Evander slipping from his lap um that doesn't that's not a credible explanation for these injuries. And uh the defendant has repeatedly denied that the child even hit his head um that he caught him before he did. And uh you know then he changed his statement at some point that that the child may have struck his head when he slipped uh defense defense counsel argues that um it's understandable that the person in this position would want to not admit that they had dropped their child and caused these injuries which doesn't make doesn't make sense because he he was being accused of intentionally murder injuring uh his child causing his death. The defendant would want to if it was an accident he would want everyone to know that but he uh continue to claim that the child never even hits the floor. So we're not saying that that that they have to prove um it's the state's burden to prove um what happened but there is no there is no logical explanation for how these injuries could have occurred. Um given the medical evidence given the time frame and uh given the nature of the injuries that the injuries would have would have been had to have been caused by some sort of violent motion. And uh as one of the justices said that the whole argument about the act, I mean the state does not have to and the judge noted this, the state does not have to prove the precise manner by which the defendant caused the injuries. Um you can circumstantially establish that it was some sort of violent act that uh caused it. Um so defense's um argument about the act requirement, the failure to prove the act requirement. Um I don't, we don't believe is a strong argument. The medical evidence indicated that it was caused by some sort of violent trauma and that it occurred very shortly before the child went into a coma and subsequently succumbed to the injuries. Uh the evidence uh about the time frame about the infliction of the injuries uh within a narrow window. Yeah. The um the various medical experts, some of them testified it could have been within 12 hours. Um one of the defendants experts testified it could have been I believe 70 could have occurred 72 hours prior. Was there any evidence that the baby was in the care of any other person other than if offended during that time? No, there wasn't. He uh he was a there was the defendant had a roommate um at the house but um there was no no evidence that there was any interaction between her and the child. And um and so I would just say that in conclusion the uh the court heard all the competing medical testimony. Court was in the best position to judge the credibility of the medical experts competing medical experts. And um I the evidence is more than sufficient to establish guilt and certainly not insufficient to the extent that no rational trier of fact would have found the defendant guilty. Yeah. Well thank you counsel. Um I'm making a note here um before we move on justice Welch or justice more. Do you have any questions? No question. Okay. Uh thank you counsel. Uh Mr Hanlon go right ahead with your rebuttal. Thank you your honor. Um I believe it was justice more um your honor who um just asked about the time frame of the injuries. I would highlight to the court the testimony of dr Eli um who was the pathologist in this case the person who actually performed the autopsy which the state put forth as one of their witnesses. And dr Eli testified that trying to provide a date for an injury is not a precise science logic I think tells us that as well. And it's only a rough estimate. Dr Eli initially testified that this um injury could go back 24 hours as much as as much as 24 hours. Um you know again I'm sure that the concept of lucid interval is one that the court has you know has become familiar with over the years. Dr Eli testified that this could go back 24 hours. Um then but then the prosecutor um uh this is this is uh not a critical term but the prosecutor um badgered dr Eli at great length in this in this transcript and got dr Eli to ultimately say um well most likely it would be less than 12 hours. So um but nonetheless dr Eli the main point is dr Eli said this is not a precise science and this is only a rough estimate. Um dr um even under the 24 hour time frame that you're suggesting was there any other person that had the custody of the baby? Yes your honor. Um um the baby's mother um Mr mr um Hickman had had the child for approximately 12 or 13 hours. So yeah the child was brought to him that evening late afternoon evening of the day before. And then this happened that the child was unresponsive um at five in the morning. So this that a roughly 12 to 13 hour time frame. So 24 hours. Yes, 24 hours. Other people were with the child. The mother was with her friends. She had stayed elsewhere for a couple of days that you know they stayed separate for a couple of days. Um and so yeah, we who knows who the child is with besides the mother and other as well as other people. So yes sir, the answer is yes. Um and then dr Goyal G. O. Y. A. L. Um testified this is the neuroradiologist um testified that the head trauma occurred recently quote unquote um and that the bleeding had to occur within hours, days or a few weeks at most. Dr Goyal's testimony I think gives um you know gives rise to what um dr Eli had said that this is this is uh not a precise science. This is a rough estimate. And again um even if this uh this these injuries very tragic, needless to say, even if this happened within the 12 hours, I mean I think if we look at this, look the most likely explanation your honors um is that his story to the police was true. He dropped his child, he dropped his and the child hit the floor and he was too afraid to admit it. At the time he told that to the police, the child was not yet dead. He didn't know what the consequences of it. He was obviously hoping that there would be no extreme consequences to his child. But I just urge the court, I know you will give this, give that part a fair reading. And it's like, you know, this, this seems to be most likely what occurred. Um, um, the, um, counsel for the prosecution here, um, said that this is up to the fact finder. It's up to the fact finder. But the problem here again, your honors, is as you read the comments of the judge, uh, and ruling on the post trial motion, um, uh, you know, the court, it's essentially my fair interpretation of this trying to be as objective again is that the court said, you know, I don't know. Um, something happened. I don't know what, but I'm going to, you know, the ball is going to get tossed to the appellate court here to figure out if my interpretation of the testimony is fair. I mean, the court, as I said, this is not a resounding, strong finding that yes, this man did, did this, did this crime. Um, so your honors, um, I appreciate your time. Thank you. Uh, thank you. I asked that the court reverse this, this conviction of mr Hickman. Thank you counsel. Um, before we finish with this matter, uh, justice Welch justice more. Do you have any questions? No. Okay. Um, well, this case actually concludes our oral arguments today. Uh, so the court will stand in recess until tomorrow morning at nine o'clock.